1
2
3
4
5
6
7

8              **UNITED STATES DISTRICT COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10

11   HUGO E. SALDANA,                    )   Case No.: 1:10-cv-01747-JLT
                                         )
12              Petitioner,              )   ORDER DENYING PETITION FOR WRIT OF
                                         )   HABEAS CORPUS (Doc. 1)
13       v.                              )
                                         )   ORDER DIRECTING CLERK OF COURT TO
14   M. D. McDONALD, Warden, et al.,     )   ENTER JUDGMENT AND CLOSE FILE
                                         )
15              Respondents.             )   ORDER DECLINING TO ISSUE CERTIFICATE
                                         )   OF APPEALABILITY
16                                       )
                                         )
17   _____ )

18          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

19   pursuant to 28 U.S.C. § 2254.  On September 27, 2010, Petitioner filed his written consent to the

20   jurisdiction of the United States Magistrate Judge for all purposes.  (Doc. 10).  On October 7, 2010,

21   Respondent filed his written consent to the jurisdiction of the United States Magistrate Judge for all

22   purposes.  (Doc. 14).

23                          **PROCEDURAL HISTORY**

24          Petitioner is in custody of the California Department of Corrections and Rehabilitation

25   ("CDCR") serving an indeterminate sentence of 15 years-to-life and a concurrent determinate sentence

26   of three years, pursuant to a judgment of the Superior Court of California, County of Tulare (the

27   "Superior Court") for attempted murder (Cal. Pen. Code §§ 187(a) and 664), and assault by means

28

                                            1

likely to create great bodily injury (Cal. Pen. Code § 245(a)(1)). (Lodged Documents ("LD") 2; Clerk's Transcript on Appeal ("CT") 450-453).[1]  The jury also found special allegations to be true that Petitioner personally inflicted great bodily injury on the victim and that the offenses were committed to further the activity of a criminal street gang.  (Cal. Pen. Code § 12022.7(a) and § 186.22(b)(1)(C), respectively).  (Id.).

Petitioner subsequently filed a direct appeal in the California Court of Appeals, Fifth Appellate District (the "5th DCA"), which was denied by that court on June 25, 2009, in an unpublished opinion. (LD 4).  On July 24, 2009, Petitioner filed a petition for review in the California Supreme Court.  (LD 5).  On September 30, 2009, the state supreme court denied Petitioner's petition for review.  (LD 6).

On September 10, 2010, Petitioner filed the instant petition.  (Doc. 1).  Respondent concedes that all grounds for relief in the petition have been fully exhausted.  (Doc. 18, p. 8).

## FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the 5th DCA's unpublished decision:

John and Perez attended the same high school in 2006. At that time, Perez was a member of Lindsay North Side (LNS), which is a Northern (Norteno) affiliated gang. John was not gang affiliated. John testified that Perez disliked him because he prevented Perez from beating up another student. Also, John was friends with Johnny Chavarria, a former Northern gang member who changed allegiances and committed acts for the Southern affiliated gang. People who did not like Chavarria took it out on John "[w]hen they blew up [John's] truck" in February. John ended his friendship with Chavarria in late April or early May because John recognized that "a lot of people disliked" Chavarria and he was concerned for his safety. Also, some people told him that he was "hanging around with the wrong people, and [John] knew it was [Chavarria]." Perez testified that he argued with John throughout the school year.

John testified that around 11:00 p.m. on the evening of June 9, he attended a party with his sister. He saw a group of six people at the party who he thought might be Nortenos, including Perez and Humberto Ochoa. Ochoa bumped into him and gave him a dirty look; Perez stared at him in a mean way. John was afraid that Perez and his friends were going to beat him up so he stayed by a friend, Cortay Taylor.

Around midnight, the party moved to another house on the same street. John and his sister walked toward the party's new location. When John reached the driveway, he saw a large

---

[1] The indeterminate 15 years-to-life and 3-year determinate sentences are based upon Petitioner's conviction for attempted murder and the three-year enhancement to that substantive charge.  Petitioner's sentence on the assault with a deadly weapon conviction, plus two enhancements, resulted in a determinate sentence of sixteen years.  However, the imposition of the latter sentence was stayed pursuant to Cal. Pen. Code § 654.  (CT 450-453; LD 4, pp. 14-16).

group of males wearing red clothing walking up the street. John could tell that they were Nortenos. Perez and Garza were members of this group. John heard Garza ask Perez, "[I]s this the guy?" Perez nodded affirmatively. John realized that they were talking about him. The group's demeanor became more aggressive; its members looked angry and they clenched their fists. John attempted to walk away. Garza grabbed him and tried to hit him. John ducked. Several members of the group spread out and partially surrounded John.

John ran toward an orange grove. He looked back and saw Perez and another person chasing him. He heard a loud sound and saw a flash. He looked back a second time and saw another large flash. He fell to the ground and realized that he had been shot. John pulled out his cell phone and attempted to call his sister or the police but could not get reception. He saw three people, including appellant, running toward him. They all were holding knives. Appellant swung his knife at John. John put up his hands in self-defense and appellant stabbed him in the left forearm. John fell and landed in the roadway. Appellant stabbed John in the back and in the back of the head. A vehicle drove up and everyone ran away. Two people got out of the vehicle and assisted John. John is positive that appellant is the person who stabbed him.

Perez testified that he went to the party, which was also attended by Ochoa and Garza. He did not see appellant there. When he was walking to the new location of the party with Garza and Ochoa, he saw John. Garza tapped John on the shoulder. John turned around. Garza swung at him, but missed. John began running. Another group of five to six people began chasing John. Appellant and Ricardo Picasso were members of the group of people who chased John. Perez heard five to six gunshots. Appellant, Picasso and another person appeared to be fighting with John. Perez saw appellant at a friend's house a few days later. Appellant told Perez that he stabbed John and hoped John would die. Appellant showed Perez a little bloodstain that was on one of the shoes appellant was wearing.

Sara Anguiano testified that she saw appellant, Perez, Garza and Picasso at the party. Anguiano walked to the party's second location. She saw appellant, Garza and Picasso surround John. She was about 12 to 15 feet away and could tell by their body language that they were angry. Perez was standing by her. Garza punched John, who fell to the ground. John got up and began running. She went around to the back of the house, gathered her friends and left the party.

Taylor testified that he remained outside the house where the party began. He heard gunshots and then he saw people running. Garza was one of the people who ran. He was holding something in his hand underneath the red jersey he was wearing. Taylor's sister saw Garza and seven or eight boys running. They were wearing red attire. Taylor and his sister got into their car and drove south. They stopped when they saw someone lying in the road. Taylor got out of the car and found John lying on his back. It appeared to Taylor that John had been shot in the belly and that his arm was cut. John told Taylor that Perez injured him.

John was taken to the hospital and treated.

John told police officers that Perez or "Congo" injured him. John testified that he did not initially mention appellant to the police because he was frantic and worried about his survival.

He was previously acquainted with appellant. He started thinking about a person with the first name of "Hugo" about four or five days after he was injured. John mentioned the name "Hugo" name to his family while discussing suspects. His family members suggested that Hugo's last name could be Gomez. John told the police that the person who stabbed him was named "Hugo Gomez." One of John's sisters examined a high school yearbook and determined that Hugo's last name was Saldana, not Gomez. She called a police detective and gave him this information. After receiving this information, a photographic lineup including appellant was created and John identified appellant as the person who stabbed him.

A Lindsay police officer testified that he contacted appellant in April 2003. Appellant stated that he was not an active gang member but that the gang lifestyle was attractive to him. Another Lindsay police officer arrested appellant and Picasso in April 2006. Appellant said that he had a Northern association and Picasso said that he was a Northern affiliate.

Lindsay Police Department Officer Jose Dominguez was in charge of the department's gang unit. LNS is a Norteno subset; it is the predominate gang in Lindsay. Southern gangs were disliked in Lindsay and their members had been targeted by LNS members. He opined that in June 2006 Perez was an associate of LNS and was attempting to gain membership. Picasso was an LNS member and Ochoa was an associate of LNS. He was not sure if appellant was an LNS member.

Tulare County Sheriff's Department Detective Steve Sanchez testified as a gang expert. He opined that appellant, Picasso and Garza were LNS members. Perez was an LNS member on June 9 but was now a gang dropout. Sanchez testified about two predicate criminal acts committed by LNS members and testified that the primary activities of Northern gangs in Tulare County are homicide, attempted murder, drive-by shootings and assault with a deadly weapon. Sanchez opined that the charged offenses were committed to benefit LNS.

Appellant presented three character witnesses who testified that he was not a violent person.

Dr. Joe Lopez testified as a defense gang expert. He opined that appellant associated with gang members but was not a gang member. The attack on John could have been gang related but it also could have been motivated by other factors.

(LD 4, pp. 3-7).

## DISCUSSION

### I.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States

4

1   Constitution.  The challenged conviction arises out of the Tulare County Superior Court, which is

2   located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

3       On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

4   1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

5   Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997);  Jeffries v.

6   Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other*

7   *grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after

8   statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore

9   governed by its provisions.

10      II.     Legal Standard of Review

11      A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless he

12   can show that the state court's adjudication of his claim:

13      (1)  resulted in a decision that was contrary to, or involved an unreasonable application of,
             clearly established Federal law, as determined by the Supreme Court of the United States;
14           or
15      (2)  resulted in a decision that "was based on an unreasonable determination of
             the facts in light of the evidence presented in the State court proceeding.

16

17   28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003);  Williams v. Taylor, 529 U.S. at

18   412-413.

19      A state court decision is "contrary to" clearly established federal law "if it applies a rule that

20   contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts

21   that is materially indistinguishable from a [Supreme Court] decision but reaches a different result."

22   Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams v. Taylor, 529 U.S. 326, 405-406 (2000).

23   A state court decision involves an "unreasonable application" of clearly established federal law "if the

24   state court applies [the Supreme Court's precedents] to the facts in an objectively unreasonable

25   manner."  Id., quoting Williams, 529 U.S. at 409-410; Woodford v. Visciotti, 537 U.S. 19, 24-25

26   (2002)(*per curiam*).

27

28

1    Consequently, a federal court may not grant habeas relief simply because the state court's

2    decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable.

3    Wiggins v. Smith, 539 U.S. 510, 511 (2003) (citing Williams v. Taylor, 529 U.S. at 409).  In

4    Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an

5    "unreasonable application" of federal law is an objective test that turns on "whether it is possible that

6    fairminded jurists could disagree" that the state court decision meets the standards set forth in the

7    AEDPA.  If fairminded jurists could so disagree, habeas relief is precluded.  Richter, 131 S.Ct. at 786.

8    As the United States Supreme Court has noted, AEDPA's standard of "contrary to, or involv[ing] an

9    unreasonable application of, clearly established Federal law" is "difficult to meet," because the

10   purpose of AEDPA is to ensure that federal habeas relief functions as a "'guard against extreme

11   malfunctions in the state criminal justice systems,'" and not as a means of error correction.  Richter,

12   131 S.Ct. at 786, quoting Jackson v. Virginia, 443 U.S. 307, 332, 99 S.Ct. 2781, n. 5 (1979)(Stevens,

13   J., concurring in judgment).  The Supreme Court has "said time and again that 'an *unreasonable*

14   application of federal law is different from an *incorrect* application of federal law.'"  Cullen v.

15   Pinholster, 131 S.Ct. 1388, 1410-1411 (2011).  Thus, a state prisoner seeking a writ of habeas corpus

16   from a federal court "must show that the state court's ruling on the claim being presented in federal

17   court was so lacking in justification that there was an error well understood and comprehended in

18   existing law beyond any possibility of fairminded disagreement."  Richter, 131 S.Ct. at 787-788.

19   Moreover, federal "review under § 2254(d)(1) is limited to the record that was before the state

20   court that adjudicated the claim on the merits."  Cullen, 131 S.Ct. at 1398 ("This backward-looking

21   language requires an examination of the state-court decision at the time it was made.  It follows that

22   the record under review is limited to the record in existence at the same time–i.e., the record before the

23   state court.")

24   The second prong of federal habeas review involves the "unreasonable determination" clause

25   of 28 U.S.C. § 2254(d)(2).  This prong pertains to state court decisions based on factual findings.

26   Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003).  Under

27   § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's

28

6

claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment"). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

The AEDPA also requires that considerable deference be given to a state court's factual findings. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. at 340. Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-077 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court conducts "an independent review of the record...to determine whether the state court [was objectively unreasonable] in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002); see Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). Where the state court denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the deferential standard of the AEDPA do not apply and the federal court must review the petitioner's 's claims de novo. Pirtle v. Morgan, 313 F.3d at 1167.

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).  Some constitutional errors, however, do not require that the petitioner demonstrate prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984).  Furthermore, where a habeas petition governed by the AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002);  Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).

III.     Review of Petitioner's Claims.

The instant petition itself alleges the following as grounds for relief: (1) Petitioner's due process rights were violated by permitting evidence at trial that a witness was attacked in jail; (2) insufficient evidence was presented that the attempted murder was willful, deliberate, and premeditated; (3) Petitioner's Sixth Amendment rights were violated when the trial court refused to instruct the jury on the lesser included offense of assault; and (4) Petitioner's right to an unanimous verdict was violated when the trial court failed to poll the jurors regarding the true finding on the great bodily injury enhancement.  (Doc. 1).

A.   Admission Of Evidence That A Witness Was Attacked In Jail.

Petitioner first contends that his due process rights were violated when the trial court permitted evidence to be introduced at trial regarding an attack on a prosecution witness while that witness was in jail.  This contention is without merit.

1.   The 5th DCA's Opinion.

The 5th DCA rejected this claim as follows:

Over defense objection on the grounds of Evidence Code section 352 and the Fifth and Sixth Amendments to the United States Constitution, Perez testified that two weeks prior to trial he was attacked in jail and cut on the cheek. Perez did not know who cut him. Perez was reluctant to testify after this attack. The court gave a limiting instruction informing the jury that this testimony was to be considered solely for the purpose of assessing Perez's credibility and it

could not be considered against appellant "in any way." Sanchez subsequently testified that a cut on the mouth or cheek labels a person as a "snitch" and serves as a warning to others who might be tempted to cooperate with law enforcement.

Appellant argues that this evidence should have been excluded as excessively prejudicial and that its admission infringed his federal due process right to a fair trial. We are not persuaded.

Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." The trial court possesses great discretion in determining whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time. (People v. Rodrigues (1994) 8 Cal.4th 1060, 1124.) A court's exercise of its discretion under this section will not be reversed unless it is shown that it acted in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (People v. Jordan (1986) 42 Cal.3d 308, 316.)

No abuse of discretion occurred in this case. The contested testimony had substantial probative value. Evidence that a witness is afraid to testify or fears retaliation is relevant to an assessment of the witness's credibility. (People v. Gonzalez (2006) 38 Cal.4th 932, 946.) "An explanation of the basis for the witness's fear is likewise relevant to [his or] her credibility and is well within the discretion of the trial court. [Citations.]" (People v. Burgener (2003) 29 Cal.4th 833, 869.) The source of the threat does not matter. (People v. Olguin (1994) 31 Cal.App .4th 1355, 1369.) "A witness who testifies despite fear of recrimination of any kind by anyone is more credible because of his or her personal stake in the testimony." (Id. at p. 1368.) The jury was entitled not just to know that Perez was afraid but also to learn sufficient facts to be able to evaluate his fear. Also, there was no risk of unfair prejudice present. No evidence was presented suggesting that appellant was connected with the attack on Perez. Also, the court gave a limiting instruction directing the jury to consider the contested testimony only for the purpose of assessing Perez's credibility. We presume that the jury followed its instructions. (People v. Guerra (2006) 37 Cal.4th 1067, 1115.) Accordingly, we conclude this evidence was not so inflammatory that its probative value was substantially outweighed by its potential for unfair prejudice. For the same reasons, we find that its admission did not deny appellant a fair trial in violation of his due process right. (People v. Quartermain (1997) 16 Cal.4th 600, 628-629 [no federal constitutional violation when evidence was not inadmissible under Evidence Code section 352].)

(LD 4, pp. 10-12).

2. Analysis.

First, as Respondent correctly argues, the United States Supreme Court has expressly left open the question of whether the admission of propensity evidence violates due process. See Estelle v. McGuire, 502 U.S. at 75, n. 5; see Holgerson v. Knowles, 309 F.3d 1200, 1202 (9th Cir.2002) (habeas relief not warranted unless due process violation clearly established by the Supreme Court); Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001), reversed on other grounds, Woodford v. Garceau, 538 U.S. 202 (2003)(the Supreme Court "has never expressly held that it violates due process to admit

1  other crimes evidence for the purpose of showing conduct in conformity therewith...."). In this regard,

2  in <u>Holley v. Yarborough</u>, 568 F.3d 1091 (9th Cir. 2009), the Ninth Circuit explained as follows:

> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ [of habeas corpus] should be issued when constitutional errors have rendered the trial fundamentally unfair [Citations], it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.

6  <u>Holley</u>, 568 F.3d at 1101.

7       Hence, the state courts' rejection of Petitioner's claim *could not* have been "contrary to, or an

8  unreasonable application of, clearly established" United States Supreme Court authority, since no such

9  "clearly established" Supreme Court authority exists. 28 U.S.C. § 2254(d)(1).

10      Second, Petitioner's claim would normally sound only in state law and, therefore, would not be

11 cognizable in federal habeas proceedings. A federal habeas corpus court has no authority to review a

12 state's application of its own laws, but rather must determine whether a prisoner's constitutional or

13 other federal rights have been violated. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Jackson v.</u>

14 <u>Ylst</u>, 921 F.2d 882, 885 (9th Cir. 1990). Generally, the admissibility of evidence is a matter of state

15 law, and is not reviewable in a federal habeas corpus proceeding. <u>Estelle</u>, 502 U.S. at 67; <u>Middleton v.</u>

16 <u>Cupp</u>, 768 F.2d 1083, 1085 (9th Cir.), *cert. denied,* 478 U.S. 1021 (1985).

17      Nevertheless, there can be habeas relief for the admission of prejudicial evidence if the

18 admission was fundamentally unfair and resulted in a denial of due process. <u>Estelle</u>, 502 U.S. at 72;

19 <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984); <u>Walters v. Maas</u>, 45 F.3d 1355, 1357 (9th Cir. 1995); <u>Jeffries</u>

20 <u>v. Blodgett</u>, 5 F.3d 1180, 1192 (9th Cir. 1993), *cert. denied*, 510 U.S. 1191 (1994); <u>Gordon v. Duran</u>,

21 895 F.2d 610, 613 (9th Cir.1990). However, the failure to comply with state rules of evidence alone is

22 neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds.

23 <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919-920 (9th Cir. 1991). Only if there are no permissible

24 inferences that the jury may draw from the evidence can its admission rise to the level of a due process

25 violation. <u>Id</u>. at 920. Intent is a permissible inference that the jury may draw from the evidence of

26 prior bad acts. <u>See</u> <u>Houston v. Roe</u>, 177 F.3d 901, 910 n. 6 (9th Cir. 1999). Here, Petitioner has failed

27 to show that no permissible inferences existed that the jury might draw from the challenged evidence;

28

accordingly, it does not rise to the level of a federal claim and is, therefore, simply an issue of state law that is not cognizable in federal habeas proceedings.

However, even if the foregoing was not true, the claim fails on its merits.  The state court concluded that permissible inferences existed for the challenged evidence because the evidence was relevant and probative as to the credibility of the witness.  (LD 4, p. 10).  The state court reasoned that the attack on the witness, a present or former gang member preparing to testify on behalf of the prosecution and against Petitioner, a member of that same gang, was probative of the witness' credibility since "[a] witness who testifies despite fear of recrimination of any kind by anyone is more credible because of his or her personal stake in the testimony."  (LD 4, p. 11).  In support of this point, the 5th DCA cited substantial California case law.  Since permissible inferences existed for the admission of the evidence, the state court's adjudication was not objectively unreasonable.  Jammal, 926 F.2d at 919—920.

Moreover, no evidence was ever presented connecting Petitioner to the attack.  Indeed, as the 5th DCA observed, the source of the threat or attack is irrelevant; it is, rather, the fact of the threat itself that establishes the witness' credibility.  (LD 4, p. 11).  Also, the trial court gave a limiting instruction that restricted the jury's consideration of that evidence to the assessment of the witness' credibility and prohibiting it from being considered against Petitioner "in any way."  (LD 4, p. 10). Under such circumstances, the admission of the challenged evidence, even if found to be erroneous, could not reasonably be said to have swayed the jury's judgment.  Hence, the error, if any, was harmless.  Brecht, 507 U.S. at 623. Accordingly, this claim must be denied.

B.  Sufficiency of the Evidence.

Petitioner next contends that insufficient evidence was presented as to the elements of attempted murder, i.e., that the act was premeditated and deliberate.  Again, this contention lacks merit.

1.  The 5th DCA's Opinion.

The 5th DCA rejected Petitioner's claim using the following analysis:

The applicable legal principles are well-known. A reviewing court must affirm the judgment if substantial evidence supports the jury's finding that the attempted murder was premeditation and deliberation. (People v. Perez (1992) 2 Cal.4th 1117, 1124 (Perez ).) Substantial evidence

is reasonable, credible, of solid value and legal significance. (<u>People v. Samuel</u> (1981) 29 Cal.3d 489, 505.)  We consider the entire record in the light most favorable to the judgment below and presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence. (<u>Perez</u>, <u>supra</u>, 2 Cal.4th at p. 1124.)  Premeditation and deliberation may be shown by circumstantial evidence. (<u>Ibid</u>.)  It is the trier of fact's exclusive province to assess the credibility of witnesses, resolve conflicts and weigh the evidence. (<u>People v. Sanchez</u> (2003) 113 Cal.App.4th 325, 330 (<u>Sanchez</u> ).)  Absent impossibility or inherent improbability, the testimony of a single witness is sufficient to prove a disputed fact. (<u>People v. Young</u> (2005) 34 Cal.4th 1149, 1181.) Since the test is whether substantial evidence supports the jury's conclusion, not whether the evidence proves guilt beyond a reasonable doubt (<u>People v. Crittenden</u> (1994) 9 Cal.4th 83, 139), an appellant who attacks the sufficiency of the evidence bears an enormous burden. (<u>People v. Sanchez, supra</u>, (2003) 113 Cal.App.4th 325, 330.)

Reviewing the evidence supporting a finding of premeditation and deliberation requires consideration of all the trial evidence in light of the legal definition of premeditation and deliberation. (<u>Perez</u>, <u>supra</u>, 2 Cal.4th at p. 1124.) Deliberation refers to the actor carefully weighing considerations in forming a course of action; premeditation means the actor thought over those considerations in advance. (<u>People v. Halvorsen</u> (2007) 42 Cal.4th 379, 419.) "The process of premeditation and deliberation does not require any extended period of time. 'The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly....' [Citations.]" (<u>People v. Mayfield</u> (1997) 14 Cal.4th 668, 767.)

<u>People v. Anderson</u> (1968) 70 Cal.2d 15 (<u>Anderson</u> ) identified three types of evidence bearing on premeditation and deliberation:

> "[¶] ... (1) facts about how and what defendant did prior to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing-what may be characterized as 'planning' activity; (2) facts about the defendant's prior relationship and/or conduct with the victim from which the jury could reasonably infer a 'motive' to kill the victim, which inference of motive, together with facts of type (1) or (3), would in turn support an inference that the killing was the result of 'a pre-existing reflection' and 'careful thought and weighing of considerations' rather than 'mere unconsidered or rash impulse hastily executed' [citation]; (3) facts about the nature of the killing from which the jury could infer that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design' to take his victim's life in a particular way for a 'reason' which the jury can reasonably infer from facts of type (1) or (2)." (<u>Anderson, supra</u>, 70 Cal.2d at pp. 26-27, italics in original.)

The <u>Anderson</u> factors provide a framework in analyzing the sufficiency of the evidence of premeditation and deliberation, but a finding that all the factors are present is not required to sustain a finding of premeditation and deliberation. (See <u>Perez</u>, <u>supra</u>, 2 Cal.4th at p. 1125.) "The <u>Anderson</u> guidelines are descriptive, not normative. [Citation.]" (<u>Perez</u>, <u>supra</u>, 2 Cal.4th at p. 1125.)

Having assessed the entirety of the evidence, we find ample proof supporting the jury's finding that appellant's attempt to murder John was deliberate and premeditated. It can be reasonably inferred that appellant arrived at the party armed with a knife. The presence of the knife suggests planning and anticipation of its possible use. John testified that immediately before he was attacked, Picasso asked Perez if this was the guy and Perez nodded his head affirmatively. Anguiano testified that appellant was part of the group that was partially surrounding John about the time this exchange occurred. Immediately afterward, Garza tried to hit John. John began running. Several people chased John. Someone shot John. John fell and then appellant

approached John and stabbed him three times. Appellant fled when a car approached. This chain of events supports a reasonable inference that there was some type of prearranged plan to attack John and that the attack was not random or spontaneous.

Also, appellant stabbed John in the back and head-places that are likely to cause death. He did not swing or slash wildly at John. Rather, he targeted vital areas of John's body. The method of the killing alone can sometimes support a conclusion that the murder was premeditated and deliberate. (People v. Hawkins (1995) 10 Cal.4th 920, 957; People v. Miranda (1987) 44 Cal.3d 57, 87; People v. Memro (1995) 11 Cal.4th 786, 863-864.)

Furthermore, there was no indication that John provoked either the shooting or the stabbing. The lack of provocation by John leads to an inference that the attack was the result of a deliberate plan rather than a rash and explosive act of violence. (People v. Miranda, supra, 44 Cal.3d at p. 87.)

Finally, there was some evidence of motive to kill John. Appellant, Picasso, Perez and Garza were all either Northern gang members or associates. John and Perez had a history of disagreements and John had stopped Perez from beating up someone. John had been friends with Chavarria, a Northern gang member who changed sides by joining the rival Southern gang. Sanchez opined that the attempted murder was committed to benefit LNS. A jury reasonably could have concluded that LNS members and associates would have considered John to be a rival or an enemy and that by killing John, appellant would increase his status within LNS and enhance LNS's general reputation for violence.

For all these reasons, we conclude that the record contains substantial evidence supporting the determination that appellant personally committed premeditated and deliberate attempted murder when he repeatedly stabbed John.

(LD 4, pp. 7-12).

2.   Analysis.

The law on sufficiency of the evidence is clearly established by the United States Supreme

Court.  Pursuant to the United States Supreme Court's holding in Jackson v. Virginia, 443 U.S. 307,

the test on habeas review to determine whether a factual finding is fairly supported by the record is as

follows:

"[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990).  Thus, only if "no

rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be

1    entitled to habeas relief.  Jackson, 443 U.S. at 324.   Sufficiency claims are judged by the elements

2    defined by state law.  Id. at 324, n. 16.[2]

3         A federal court reviewing collaterally a state court conviction does not determine whether it is

4    satisfied that the evidence established guilt beyond a reasonable doubt.  Payne v. Borg, 982 F.2d 335,

5    338 (9th Cir. 1992).  The federal court "determines only whether, 'after viewing the evidence in the

6    light most favorable to the prosecution, any rational trier of fact could have found the essential

7    elements of the crimes beyond a reasonable doubt.'"  See id., quoting Jackson, 443 U.S. at 319.  Only

8    where no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ

9    be granted.  See Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338.

10        If confronted by a record that supports conflicting inferences, a federal habeas court "must

11   presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such

12   conflicts in favor of the prosecution, and must defer to that resolution."  Jackson, 443 U.S. at 326.  A

13   jury's credibility determinations are therefore entitled to near-total deference.  Bruce v. Terhune, 376

14   F.3d 950, 957 (9th Cir. 2004).  Except in the most exceptional of circumstances, Jackson does not

15   permit a federal court to revisit credibility determinations.  See id. at 957-958.

16        Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a

17   conviction.  Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).  However, mere suspicion and

18   speculation cannot support logical inferences.  Id.; see, e.g., Juan H. v. Allen, 408 F.3d 1262, 1278-

19   1279 (9th Cir. 2005)(only speculation supported conviction for first degree murder under theory of

20   aiding and abetting).

21        After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson

22   with an additional layer of deference.  Juan H., 408 F.3d at 1274.  Generally, a federal habeas court

23

24

25

26   _____

27   [2] Although the 5th DCA's opinion does not expressly cite the Jackson v. Virginia standard, it does cite People v. Perez as articulating the appropriate legal standard.  (LD 4, p. 7).  Perez, in turn, cites Jackson v. Virginia.  2 Cal.4th at 1124. Accordingly, the state court applied the correct legal standard.

28

1  must ask whether the operative state court decision reflected an unreasonable application of <u>Jackson</u>

2  and <u>Winship</u> to the facts of the case.  <u>Id</u>. at 1275.[3]

3          Moreover, in applying the AEDPA's deferential standard of review, this Court must also

4  presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1); <u>Kuhlmann v.</u>

5  <u>Wilson</u>, 477 U.S. 436, 459, 106 S.Ct. 2616 (1986).  This presumption of correctness applies to state

6  appellate determinations of fact as well as those of the state trial courts.  <u>Tinsley v. Borg</u>, 895 F.2d

7  520, 525 (9th Cir.1990).  Although the presumption of correctness does not apply to state court

8  determinations of legal questions or mixed questions of law and fact, the facts as found by the state

9  court underlying those determinations are entitled to the presumption.  <u>Sumner v. Mata</u>, 455 U.S. 539,

10  597, 102 S.Ct. 1198 (1981).

11          Recently, in <u>Cavazos, v. Smith</u>, __U.S. __, 132 S.Ct. 2 (2011), the United States Supreme

12  Court further explained the highly deferential standard of review in habeas proceedings, by noting that

13  <u>Jackson</u>

14  "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's

15  verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a

16  sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively

17  unreasonable." <u>Renico v. Lett</u>, 559 U.S. ——, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (internal quotation marks omitted).

18  Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that

19  they must nonetheless uphold.

20  <u>Cavazos</u>, 132 S.Ct. at 3.

21  "<u>Jackson</u> says that evidence is sufficient to support a conviction so long as 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have

22  found the essential elements of the crime beyond a reasonable doubt.'  443 U.S., at 319, 99 S.Ct. 2781.  It also unambiguously instructs that a reviewing court "faced with a record of

23  historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of

24  the prosecution, and must defer to that resolution." <u>Id</u>., at 326, 99 S.Ct. 2781.

25  <u>Cavazos</u>, 132 S.Ct. at 6.

26

27  ────────────────────
    [3] Prior to <u>Juan H.</u>, the Ninth Circuit had expressly left open the question of whether 28 U.S.C. § 2254(d) requires an additional degree of deference to a state court's resolution of sufficiency of the evidence claims.  <u>See</u> <u>Chein v. Shumsky</u>,

28  373 F.3d 978, 983 (9th Cir. 2004); <u>Garcia v. Carey</u>, 395 F.3d 1099, 1102 (9th Cir. 2005).

Here, the state court expressly cited evidence of premeditation and deliberation, i.e., that Petitioner arrived at the party armed with a knife, that gang members, including Petitioner, discussed whether the victim was "the guy," that the group surrounded the victim and began to attack him, that they chased the victim and shot him, that Petitioner then approached the fallen victim and stabbed him in the back and head, places the jury could infer were deliberately chosen for their susceptibility to serious injury, that the victim did not provoke the attack, suggesting that it was planned in advance, and that there was an apparent motive to kill the victim based upon gang rivalries and politics.

Such evidence is certainly far more than mere suspicion or speculation.  It is of sufficient quantity and quality that a rational trier of fact could have found the elements of deliberation and premeditation beyond a reasonable doubt. Jackson, 443 U.S. at 319.  Accordingly, the state court's adjudication of this issue was not contrary to or an unreasonable application of clearly established federal law.

### C.  Failure To Instruct On The Lesser Included Offense of Assault.

Petitioner next contends that the trial court violated his Sixth Amendment rights by failing to instruct the jury on the elements of simple assault.  This contention is also without merit.

#### 1.  The 5th DCA's Opinion.

The 5th DCA denied Petitioner's claim as follows:

Appellant was charged in count 2 with assault with a firearm on John. The jury instructional conference was held off the record. The jury was instructed on simple battery as a lesser included offense to counts 2 and 3. The only lesser included offense contained in the verdict forms for counts 2 and 3 was simple assault. The jury found appellant guilty of count 3 as charged and guilty of simple assault as a lesser included offense to count 2.

Appellant argues that the assault conviction must be reversed because the jury was instructed on the elements of battery instead of the elements of assault. We agree that instructional error occurred, but find it harmless beyond a reasonable doubt.

The trial court has a sua sponte obligation to instruct on the general principles of law relevant to and governing the case. This duty requires the court to instruct on all elements of a charged offense. (People v. Cummings (1993) 4 Cal.4th 1233, 1311.) "Error in omitting an element of an offense in jury instructions is subject to harmless error analysis when considering the defendant's state constitutional due process right to have the jury determine every material issue presented by the evidence. [Citations .]" (Id. at p. 1312, fn. 54.) However, harmless error analysis may not be applied where an instructional error essentially withdraws all of the elements of the offense from the jury's consideration and where the jury did not find the existence of facts necessarily establishing that the omitted elements had been proved beyond a reasonable doubt. (Id. at p. 1315.)

In this case, the use of the battery instruction instead of the assault instruction did not result in omission of any elements of assault from the jury's consideration because assault is a lesser included offense of the crime of battery. A simple assault is nothing more than an attempted battery; a defendant who commits a battery necessarily has committed a simple assault. (People v. Fuller (1975) 53 Cal.App.3d 417, 421.) A battery conviction subsumes an assault conviction. (Ibid.) The same mental state of willfulness is required to commit an assault or a battery. Therefore, the court's use of the battery instruction instead of the assault instruction did not remove any element of the offense from the jury's consideration. By finding appellant guilty of battery on John, it necessarily found the existence of facts establishing that appellant assaulted John. Therefore, we find that the instructional error did not withdraw any elements of assault from the jury's consideration and was harmless beyond a reasonable doubt.

(LD 4, pp. 13-14).

2.   Analysis.

In general, the issue of whether a jury instruction is a violation of state law is neither a federal question nor a proper subject for habeas corpus relief. Estelle v. McGuire, 502 U.S. 62, 68 (1991). ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "), quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"). Indeed, federal courts are bound by state court rulings on questions of state law. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), cert. denied, 493 U.S. 942 (1989). In addition, "the availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution." Sawyer v. Smith, 497 U.S. 227, 239 (1990), quoting, Dugger v. Adams, 489 U.S. 401, 409 (1989).

In reviewing an ambiguous instruction, the inquiry is not how reasonable jurors could or would have understood the instruction as a whole; rather, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution. See Estelle v. McGuire, 502 U.S. at 72 & n. 4; Boyde v. California, 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). However, a determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution establishes only that an error has occurred. See Calderon v. Coleman, 525 U.S. 141, 146, 119 S.Ct. 500, 142 L.Ed.2d 521 (1998). If an error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict before granting habeas

1   relief. See id. at 146–47 (citing <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637, 113 S.Ct. 1710, 123

2   L.Ed.2d 353 (1993)).

3         In determining whether instructional error warrants habeas relief, a habeas court must consider

4   "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction

5   violates due process' ... not merely whether 'the instruction is undesirable, erroneous, or even

6   universally condemned.'" <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154, 97 S.Ct. 1730 (1977) (*quoting*

7   <u>Cupp v. Naughten</u>, 414 U.S. 141, 146-47, 94 S.Ct. 396 (1973)); <u>California v. Roy</u>, 519 U.S. 2, 5, 117

8   S.Ct. 337, 338 (1996) (challenge in habeas to the trial court's jury instructions is reviewed under the

9   standard in <u>Brecht v. Abrahamson</u>, 507 U.S. at 637--whether the error had a substantial and injurious

10  effect or influence in determining the jury's verdict.).  The burden of demonstrating that an erroneous

11  instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a

12  state court's judgment is even greater than the showing required to establish plain error on direct

13  appeal. <u>Hanna v. Riveland</u>, 87 F.3d 1034, 1039 (9th Cir. 1996).

14        In a criminal case, an evidentiary device must not undermine the fact-finder's responsibility at

15  trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt.

16  <u>County Court of Ulster County, N. Y. v. Allen,</u> 442 U.S. 140, 156, 99 S.Ct. 2213, 2224 (1979); <u>In re

17  Winship</u>, 397 U.S. 358, 364, 90 S.Ct. 1068 (1970).  A permissive inference is one of the most common

18  evidentiary devices, which allows, but does not require, the trier of fact to infer the elemental fact from

19  proof by the prosecutor of the basic one and which places no burden of any kind on the defendant.

20  <u>Ulster</u>, 442 U.S. at 157, 99 S.Ct. at 2224.  "Because this permissive presumption leaves the trier of fact

21  free to credit or reject the inference and does not shift the burden of proof, it affects the application of

22  the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way

23  the trier could make the connection permitted by the inference." <u>Id.</u>, 442 U.S. at 157, 99 S.Ct. at 2225;

24  <u>U.S. v. Warren</u>, 25 F.3d 890, 897 (9th Cir. 1994); <u>Sterling v. Roe</u>, 2002 WL 826807 (N.D. Cal. 2002).

25  "A permissive inference violates the Due Process Clause only if the suggested conclusion is not one

26  that reason and common sense justify in light of the proven facts before the jury."  <u>Francis v. Franklin</u>,

27  471 U.S. 307, 314-315 (1985).

28

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073 (1970). The United States Supreme Court has held that "the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury." Victor v. Nebraska, 511 U.S. 1, 5, 114 S.Ct. 1239 (1994). This standard reduces the chance that an innocent person will be conviction. In re Winship, 397 U.S. at 362. Winship does not require that every single fact upon which the jury relies be proven to a reasonable doubt. Many facts not proven to that standard may, collectively, allow the jury to infer that an element of the crime is proven beyond a reasonable doubt. To enforce Winship's rule, judges must instruct juries that they cannot return a guilty verdict unless the government has met this burden. Cool v. United States, 409 U.S. 275, 278 (1972). A jury conviction based upon an impermissibly low quantum of proof violates the jury trial guarantee of the Sixth Amendment. Sullivan v. Louisiana, 508 U.S. 275, 278 (1993). A judge can violate a defendant's rights by giving an instruction that undercuts the force of an otherwise proper beyond-a-reasonable-doubt instruction. See, e.g., Cool, 409 U.S. at 102-103; Sandstrom v. Montana, 442 U.S. 510, 521 (1979).

When a jury instruction is susceptible to a reading that would render the verdict unconstitutional and another that would generate a proper verdict, the reviewing court considers the challenged instruction in light of the full jury charge and in the context of the entire trial. See Naughten, 414 U.S. at 145-147(consider charge as whole); United States v. Park, 421 U.S. 658, 675 (1975)(consider context of whole trial). The court must then decide whether there is a reasonable likelihood that the jury applied the challenged instruction in an unconstitutional manner. Estelle, 502 U.S. at 72. A verdict remains valid if a jury instruction only tangentially undercut a proper beyond-a-reasonable-doubt instruction. Naughten, 414 U.S. at 149-150.

Regarding a lesser included offense instruction, the United States Supreme Court has held that the failure to instruct on a lesser included offense in a capital case is constitutional error if there was

evidence to support the instruction. Beck v. Alabama, 447 U.S. 625, 638 (1980).  In a non-capital case, such as the case at bar, a defendant is "entitled to an instruction on a lesser included offense if the evidence would permit a jury to rationally find him guilty of a lesser offense and acquit him of the greater." Keeble v. United States, 412 U.S. 205, 208 (1973).  However, in a noncapital case, the failure of a trial court to instruct sua sponte on lesser included offenses does not present a federal constitutional question. Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998); Turner v. Marshall, 63 F.3d 807, 813 (9th Cir.1995), *overruled on other grounds* by Tolbert v Page, 182 F.3d 677 (9th Cir.1999) (*en banc*) (finding the application of Beck to noncapital cases barred by Teague v. Lane, 498 U.S. 288, 299-300, 109 S.Ct. 1060, 1069 (1989)); James v. Reese, 546 F.2d 325, 327 (9th Cir.1976) (*per curiam*).  However, a defendant may suffer a due process violation if the court's failure to give a requested instruction prevents a defendant from presenting his theory of the case.  Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984), *cert. denied*, 469 U.S. 838 (1984); see, also, United States v. Mason, 902 F.2d 1434, 438 (9th Cir.1990) ("A defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence.").

In Bashor v. Risley,  730 F.2d 1228, 1240 (9th Cir. 1984), *cert. denied*, 469 U.S. 838 (1984), the Ninth Circuit recognized that a court's failure to give a lesser included instruction did not present a federal constitutional claim.  Bashor, 730 F.2d at 1239.  Nevertheless, the Court found "no fundamental unfairness in the trial court's failure to instruct on a lesser included offense" to a homicide charge as counsel did not request the lesser included offense instruction and the defense strategy was based "on the theory that Bashor was either guilty or not guilty of deliberate homicide." Id.; see Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000); James v. Reese, 546 F.2d 325, 327 (9th Cir. 1976)("Failure of a state court to instruct on a lesser included offense fails to present a federal constitutional questions and will not be considered in a federal habeas corpus proceeding.").

Here, the 5th DCA concluded that the trial court erred in instructing the jury on battery rather than assault, but also concluded that any error was harmless because all of the elements of assault, which is a lesser included offense of battery, are necessarily included in the battery instruction.

Hence, by finding Petitioner guilty of battery, the jury necessarily found Petitioner guilty of the lesser included offense of assault.  Moreover, as the state court noted, because all of the elements of assault are included in the battery instruction, this was not a case where the trial court failed to instruct the jurors on the essential elements of the charge.

Given these circumstances, it simply cannot be concluded that the erroneous instruction prevented Petitioner from presenting a defense or resulted in the trial being "fundamentally unfair." Bashor, 730 F.2d at 1239-1240.  Moreover, the instructions as a whole adequately instructed the jury regarding the burden of proof, the elements of each of the offenses, Petitioner's theory of the case and defenses, and the relation of that defense and theory to the reasonable doubt instruction. The jury is presumed to have followed those instructions. Weeks v. Angelone, 528 U.S. 225, 234, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000). Accordingly, the state court decision was not contrary to nor an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). Hence, the claim must be denied.

D.   Failure To Poll The Jury On The Great Bodily Injury Enhancement.

Finally, Petitioner argues that the state court erred in failing to poll the jury regarding the great bodily injury enhancement.  This contention, too, lacks merit.

1.   The 5th DCA's Opinion.

The 5th DCA denied Petitioner claim as follows:

After the verdicts were read, the court asked defense counsel if he wanted the jury to be polled "as to the charge, as well as each-each special allegation separately or together?" Defense counsel replied, "Together just as to Count 1, your honor." The jury was polled on the verdict in count 1, the premeditation special allegation, the gang enhancement attached to this count and to a firearm enhancement attached to this count that was found not true. Then the clerk stated, "That's it for Count 1." The court asked defense counsel, "Is that satisfactory, Mr. Rodriguez?" Defense counsel replied, "Yes."

Appellant argues the true finding on the great bodily injury enhancement attached to count 1 must be reversed because the jury was not polled about their verdict on it. We disagree. This contention was forfeited by defense counsel's failure to bring the court's attention to its failure to poll the jury on this particular enhancement.

In People v. Lessard (1962) 58 Cal.2d 447 at page 452, our Supreme Court explained the salient legal principle:

"[¶] The polling of the jury is a right available only upon the request of either party. (Pen.Code, § 1163.) The failure to make a proper request imposes no burden upon the court to poll the jury, nor in the absence of such request does a failure to so poll constitute a denial of a constitutional right. Where a jury is incompletely polled and no request is made for correcting the error, such further polling may be deemed waived by defendant, who cannot sit idly by and

then claim error on appeal when the inadvertence could have readily been corrected upon his merely directing the attention of the court thereto." (People v. Lessard, supra, 58 Cal.2d at p. 452 [failure to poll one of the jurors waived by defense counsel's silence]; People v. Wright (1990) 52 Cal.3d 367, 415 [same].)

In this case, defense counsel was aware of the charges and enhancements in this matter. He could have brought the omission of the great bodily injury enhancement to the court's attention when the court asked if he was satisfied with the polling. Instead, defense counsel affirmatively stated that he was satisfied with the polling of the jury. There is no reasoned distinction between the failure to poll one of the jurors about the verdict and the failure to poll the jurors about an enhancement. In both instances, the jury was incompletely polled and the error easily could have been corrected if brought to the court's attention. Thus, we conclude that appellate review of the court's failure to poll the jury on the great bodily injury enhancement was forfeited.

(LD 4, pp. 12-13).

### 2.   Analysis.

Respondent argues that Petitioner's claim is procedurally defaulted, or, in the alternative, that it fails to state a cognizable federal habeas claim premised upon a constitutional right.  The Court agrees with Respondent.

A federal court will not review a claim of federal constitutional error raised by a state habeas petitioner if the state court determination of the same issue "rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). This rule also applies when the state court's determination is based on the petitioner's failure to comply with procedural requirements, so long as the procedural rule is an adequate and independent basis for the denial of relief. Id. at 730, 111 S.Ct. 2546. For the bar to be "adequate," it must be "clear, consistently applied, and well-established at the time of the [ ] purported default." Fields v. Calderon, 125 F.3d 757, 762 (9th Cir.1997). For the bar to be "independent," it must not be "interwoven with the federal law." Michigan v. Long, 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). If an issue is procedurally defaulted, a federal court may not consider it unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 749–50, 111 S.Ct. 2546.

In Bennett v. Mueller, the Ninth Circuit held:

Once the state has adequately pled the existence of an independent and adequate state

procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

322 F.3d 573, 586 (9th Cir.2003).

In Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir.2002), the Ninth Circuit held that California's contemporaneous objection doctrine is clear, well-established, and has been consistently applied when a party has failed to make any objection to the admission of evidence.  In Vansickel v. White, 166 F.3d 953 (9th Cir. 1999), the Ninth Circuit held that the contemporaneous objection bar is an adequate and independent state procedural rule. Here, as the 5th DCA noted, it is undisputed that Petitioner did not make a contemporaneous objection regarding polling of the jury as to the great bodily injury enhancement.  To the contrary, his counsel indicated he was satisfied with the juror polling.  Nor did Petitioner respond in his Traverse to Respondent's contention that the claim was procedurally barred.  Because Petitioner has not taken issue with the application of California's contemporaneous objection rule, this Court need not consider Petitioner's claim since it is procedurally barred.

However, even assuming, arguendo, the claim is not procedurally barred, it fails to state a federal habeas claim because no federal constitutional right is involved.  The right to poll the jury, though one of long-standing in federal and most state courts, see Virgin Islands v. Hercules, 875 F.2d 414, 417 (3d Cir.1989), is not, however, a binding constitutional right.  Id.; see United States v. Sturman, 49 F.3d 1275, 1282 (7th Cir. 1995) (right to poll jury is not of constitutional dimension); United States v. Carter, 772 F.2d 66, 67 (4th Cir. 1985) (same); United States v. Beldin, 737 F.2d 450, 455 (5th Cir.) (same); Jaca Hernandez v. Delgado, 375 F.2d 584, 585-86 (1st Cir. 1967)(same). In federal court, the right to poll the jury instead derives from Federal Rule of Criminal Procedure 31(d), which allows a poll of the jury at the request of any party or upon the court's own motion. Hercules, 875 F.2d at 418; Beldin, 737 F.2d at 455.  Federal criminal procedural rules such as Rule 31(d) "do not apply to state court proceedings." Boardman v. Estelle, 957 F.2d 1523, 1525 (9th Cir. 1992). Thus, Petitioner's state trial court was only bound by, and therefore could have violated only,

California Penal Code § 1163, which requires the court to poll the jurors individually at the request of either party.  The denial of a state-created procedural right such as this may present a cognizable due process claim on federal habeas corpus review only if it resulted in a "deprivation of a substantive right protected by the Constitution."  Bonin v. Calderon, 59 F.3d 815, 842 (9th Cir.1995). Petitioner does not present such a claim here because, as discussed above, the right to poll the jury is not one protected by the Constitution.  Violations of state law are not a basis for federal habeas corpus relief. Estelle, 502 U.S. at 67-68.  Accordingly, Petitioner's claim, even if not procedurally barred, would fail to state a cognizable federal habeas claim for which this Court could grant relief.

Because Petitioner has not established any grounds for habeas relief, the Court **DENIES** the petition for writ of habeas corpus with prejudice.

Moreover, the Court declines to issue a certificate of appealability.  A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances.  Miller-El v. Cockrell, 537 U.S. 322, 335-336 (2003).   The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court;  or
>>
>> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denied a petitioner's petition, the court may only issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To make a substantial showing, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further'."  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (*quoting* Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In the present case, the Court finds that Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Thus, the Court DECLINES to issue a certificate of appealability.

**<u>ORDER</u>**

For the foregoing reasons, the Court HEREBY ORDERS as follows:

1.  The petition for writ of habeas corpus (Doc. 1), is **DENIED** with prejudice;

2.  The Clerk of the Court is **DIRECTED** to enter judgment and close the file;

3.  The Court **DECLINES** to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   __**April 13, 2013**__                    _____**/s/ Jennifer L. Thurston**
                                                                UNITED STATES MAGISTRATE JUDGE